163 N.J. Super. 424 (1978)
394 A.2d 1257
BERNARD KLEINKE AND CAROL KLEINKE, PLAINTIFFS,
v.
CITY OF OCEAN CITY AND JOHN DOE, DEFENDANTS.
Superior Court of New Jersey, Law Division (Civil).
Decided October 24, 1978.
*426 Mr. Stuart B. Finifter, for plaintiffs (Messrs. Land & Finifter, attorneys).
Ms. Mary Maudsley Reiss, for defendants (Messrs. Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, attorneys).
STALLER, J.C.C. (temporarily assigned).
In this personal injury action against the City of Ocean City, a municipal corporation and its employee, John Doe, interrogatories and depositions in the discovery process reveal the following pertinent facts:
Plaintiff, Bernard Kleinke was, on or about July 8, 1975, standing in the ocean in approximately 1 1/2 feet of water at the Tenth Street Beach in Ocean City, when a wave rolled in upon him at chest height and at that moment he was injuriously struck by a person whom he believed was engaged in body surfing. No lifeguards were sitting in the elevated lifeguard stand on the Tenth Street Beach while he was in the water; the lifeguards assigned to that section of the beach were themselves in the water, the nearest one of them being 100 to 125 feet from him at the time he was struck and injured. Neither prior to the time Kleinke entered the water nor or any time thereafter, before he was injured, did the lifeguards or any one else warn him that swimmers or bathers were body surfing in that area.
From a lifeguard, Larry Gleason, assigned to the Tenth Street Beach, it was elicited on depositions that he never warned anyone not to body surf at the Tenth Street Beach, regardless of the density of the crowd or the roughness of the water; that he was never instructed by anyone for the Ocean City Beach Patrol or by anyone else as to when and under what circumstances body surfing should be prohibited. *427 Board surfing, however, was prohibited at the Tenth Street Beach. He stated that, depending on the swimmer, the force of a wave could propel a swimmer at a faster rate than he could swim under his own power and that prior to this occasion he, as a lifeguard, was aware that a body surfer being propelled through the water by an ocean wave could strike a person standing in shallow water. It was also elicited from Gleason that since July 8, 1975 he had seen someone else struck by a body surfer on the Eighth Street Beach in Ocean City by a wave about four feet high. He described the normal size waves at the Tenth Street Beach during that summer as being between three and six feet high.
Defendants Ocean City and its employee move for summary judgment of dismissal pursuant to R. 4:46-2. They contend that plaintiff is barred from bringing this action against the public entity upon such a factual pattern because it is immune from suit under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. in its several sections and there are no exceptions in the statute which preclude such immunity.
Plaintiff seeks relief in this matter under N.J.S.A. 59:4-1 et seq. and N.J.S.A. 59:3-11, two sections of the New Jersey Tort Claims Act. One important precondition to recovery under N.J.S.A. 59:4-1 et seq. is that plaintiff establish that the property upon which his injury occurred was in a "dangerous condition" at the time of the injury. Plaintiff here contends that the practice of "body surfing" in the ocean, especially in crowded conditions and during three to six feet wave heights, constituted a "dangerous condition" of property within the meaning of N.J.S.A. 59:4-2, the liability section of the act. "`Dangerous condition' means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a).
*428 Under N.J.S.A. 59:3-11 plaintiff must establish that his injury occurred at a "public recreational facility," that defendant public entity undertook to provide supervision of the facility and that it was negligent in its supervision. Plaintiff alleges that the Tenth Street Beach was such a recreational facility and that defendant undertook to supervise said facility by organizing and maintaining a beach patrol pursuant to N.J.S.A. 40:185-4 and 5 and N.J.S.A. 40:92-7.1 Plaintiff further alleges that defendant Ocean City was negligent in its supervision by failing to have one of its lifeguards maintain a position in the lifeguard stand at the Tenth Street Beach; by failing to prohibit body surfing under certain conditions; by failing to warn plaintiff of the existence of body surfers in the area and because of the improper location of its lifeguards in the water.
Plaintiff's first ground for relief is based on N.J.S.A. 59:4-2, which states:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
The threshold issue is whether body surfing can, in certain circumstances, create a "dangerous condition" of property. Defendant relies upon Setrin v. Glassboro State College, 136 N.J. Super. 329 (App. Div. 1975), and Cogsville v. Trenton, 159 N.J. Super. 71 (App. Div. 1978), *429 for the proposition that a "dangerous condition" is restricted to physical conditions.
In Cogsville v. Trenton, the court held that the presence on state-owned property of a vicious dog (owned by a tenant of the city), whose existence was known to city officials, was not a "dangerous condition" of property. In Setrin v. Glassboro State College, where plaintiff was stabbed on a state college campus, the court held that the combination of third party's criminal conduct in stabbing plaintiff together with the existing atmosphere of racial tension at the time did not constitute a "dangerous condition."
In its opinion the Setrin court noted that since the New Jersey Tort Claims Act was modeled after the California Tort Claims Act, California decisions might be looked to for guidance in interpreting the act. From the California decisions, notably Hayes v. State, 11 Cal.3d 469, 113 Cal. Rptr. 599, 521 P.2d 855 (Sup. Ct. 1974), the court in Setrin v. Glassboro State College adopted the principle that a "dangerous condition" is not created by the acts of third persons alone. The California cases do provide, however, that "[l]iability for injury caused by a dangerous condition of property has been imposed when an unreasonable risk of harm is created by a combination of defect in the property and acts of third parties." Hayes v. State, supra, as especially cited in Baldwin v. California, 6 Cal. 3d 424, 99 Cal. Rptr. 145, 491 P.2d 1121 (Sup. Ct. 1972) (emphasis in original). After considering the facts of Setrin v. Glassboro State College and Cogsville v. Trenton it is apparent that the principle of Baldwin v. California is unaffected by those cases and has applicability in the present case.
In Setrin and Cogsville the physical conditions of the properties themselves in no way contributed to the "dangerous condition" which plaintiffs alleged had caused their injuries. The injuries occurred on state or city-owned property, but were caused solely by third party actions. In the present case the injury complained of was allegedly caused *430 by a person body surfing. Body surfing consists of allowing one's body to be propelled through the water by the force of a wave. While a three to six-foot wave is not a "defect" of the ocean, in the language of Baldwin v. California, id., it is a physical condition of the ocean which, in proper combination with the actions of a third party, could have contributed to plaintiff's injury. The fact that waves are capable of contributing to and enhancing the likelihood of injuries may well be just the reason why defendants prohibit the use of surfboards at the Tenth Street Beach. The court, therefore, finds that the concurrence of the actions of a body surfer and the existence of three to six foot waves is capable of creating a "dangerous condition" within the meaning of the New Jersey Tort Claims Act.
Defendant argues, however, that N.J.S.A. 59:4-8 specifically bars recovery on a "dangerous condition" theory for an injury occurring in the ocean bordering a beach. N.J.S.A. 59:4-8 reads:
Neither a public entity nor a public employee is liable for an injury caused by a condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach. [Emphasis supplied]
In support of its contention defendant also cites a portion of the 1972 comment to N.J.S.A. 59:4-8:
* * * Thus in sections 59:4-8 and 59:4-9 a public entity is provided an absolute immunity irrespective of whether a particular condition is a dangerous one.
Whether there is merit to defendant's argument depends on whether the immunity granted to public entities in 59:4-8 covers all conditions of unimproved public property. In a recent case, Diodato v. Camden Cty. Park Comm'n, 162 N.J. Super. 275 (1978), the Superior Court in Camden County considered this question. In Diodato plaintiff sought to hold defendant park commission liable under a "dangerous condition" theory for injuries sustained when plaintiff *431 dove into the Cooper River and struck a partially submerged oil drum. Plaintiff argued that defendant had a duty to either post "no swimming" warning signs or to remove the hazard from the river and that since an oil drum is not a "natural condition" of the property, 59:4-8 would not bar recovery. The defendant argued immunity, contending that the fact that the oil drum was not a "natural condition" of the unimproved property was irrelevant since 59:4-8 must bar recovery for injuries sustained not only from natural conditions but from all conditions of such property. The court disagreed:
The defendant contends that the use of the word "condition" without the word "natural" followed by the phrase "including but not limited to any natural condition", evidences a clear intent to cover all conditions on unimproved public property. This is an unreasonable interpretation of the legislative intent. The statute clearly applies to the physical condition of the premises itself, not to the super imposition of an artificially created hazard thereon. The words "including but not limited to", as used in N.J.S.A. 59:4-8 refer to the varieties of unimproved public property covered therein rather than the quality of the injury producing condition. * * * [at 289, emphasis supplied]
In applying the Diodato court's interpretation of N.J.S.A. 59:4-8 to the facts of the present case, it is clear that if the force of a wave alone  a natural condition of the ocean  had caused plaintiff's injuries, defendant would be immune from liability. It follows, however, that a body surfer riding a three to six-foot wave would be, in effect, a "superimposition of an artificially created hazard," and the proper combination of body surfer and wave could create a dangerous condition of property for which N.J.S.A. 59:4-8 would not grant immunity.
The last sentence of the above cited paragraph in Diodato does not affect this reasoning:
* * * Since the injury producing instrumentality in this case bears no relation to the natural condition of the unimproved public property, defendant's motion [for summary judgment] must be denied. [at 289, emphasis supplied]
*432 It is logical to assume that the court is referring to a generic relationship here. In other words, if the instrumentality of the injury had been, for example, a large rock jutting out from the river bank (instead of an artificially imposed hazard like an oil drum) and it was partially submerged in water, the court would have held that since the rock was an inherent part of the river there could be no liability by virtue of N.J.S.A. 59:4-8. This reading is consistent with the legislative intent behind N.J.S.A. 59:4-8 that public entities not be burdened with making certain that unimproved public property in its natural condition is safe. This intent is described in the first sentence of the 1972 comment to N.J.S.A. 59:4-8:
Section 59:4-8 * * * reflect[s] the policy determination that it is desirable to permit the members of the public to use public property in its natural condition and that the burdens * * * of putting such property in a safe condition * * * would probably cause many public entities to close such areas.
Therefore, N.J.S.A. 59:4-8 does not grant immunity to Ocean City for an injury resulting from an allegedly dangerous condition of property created by a body surfer riding three to six foot waves.
Plaintiff's other ground for relief is based on N.J.S.A. 59:3-11. Defendant contends that since beaches are explicitly covered with immunity under N.J.S.A. 59:4-8, it would be inconsistent to interpret "public recreational facilities" described in N.J.S.A. 59:3-11 as including beaches.
Defendant's argument fails. Under New Jersey statutes and case law beaches are considered public recreational areas. "The governing body of a municipality may acquire beaches for public resort and recreation and by ordinance make and enforce rules and regulations for the use of such beaches." Van Ness v. Deal, 139 N.J. Super. 83, 97 aff'd, 78 N.J. 174 (1978). See also, N.J.S.A. 40:185-4 and 5; N.J.S.A. 40:92-7.1.
*433 Also, the legislative concern expressed by N.J.S.A. 59:4-8 is that public entities should not be unduly burdened with having to make natural conditions of unimproved land safe. The provisions of N.J.S.A. 59:3-11 do not jeopardize that legislative concern because they provide that a public employee (and hence a public entity N.J.S.A. 59:2-7) is not liable for failure to provide supervision to public recreational areas. The concern of N.J.S.A. 59:3-11, is simply that once supervision is undertaken it must not be done in a negligent manner.
Since defendant Ocean City is not immune under N.J.S.A. 59:4-8 nor under N.J.S.A. 59:3-11, and because a "dangerous condition" of property can be created by a body surfer riding three to six-foot waves under crowded conditions, numerous questions of fact arise concerning the liability of Ocean City. As such, the motion for summary judgment brought by defendants, City of Ocean City and John Doe, individually, is denied.