179 N.J. Super. 460 (1981)
432 A.2d 553
RODNEY MORRIS, AN INFANT BY HIS GUARDIAN AD LITEM, CLEO MORRIS, AND CLEO MORRIS, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
CITY OF JERSEY CITY AND BOARD OF EDUCATION OF CITY OF JERSEY CITY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 7, 1981.
Decided June 24, 1981.
*461 Before Judges FRITZ, POLOW and JOELSON.
Tulipan & Kushner, attorneys for appellants (Alexander Kushner, on the brief).
Louis P. Caroselli, Corporation Counsel, attorney for respondent City of Jersey City (William C. Gerrity, on the brief).
Eugene W. Cullen, attorney for respondent Board of Education of the City of Jersey City.
PER CURIAM.
Plaintiffs' proofs support the charge that the infant plaintiff was injured while "shooting baskets" with others on a public school basketball floor after school hours when this gym was made available to youth who wanted to enter into this activity. It is also clear that the only person present connected with either of defendants was one Mr. Frager (or Fraiser) who, the infant plaintiff tells us, was "[l]ike a recreation man [who] watches over us, make sure nothing happens in the gym." He *462 was one of two such men who were never there together. The testimony reveals he was there to keep out "[o]lder boys. So they won't mess with us," and to make certain "like at a certain time period so no other kids that supposed to not, not supposed to come in come in." He positioned himself at a desk "[a]t the door," where he remained sitting and where in fact he was at the time of the incident when he was reading a newspaper. He did not give out basketballs  "You have to bring your own"  he did not referee; he did not play; he did not even carry a whistle.
It was stipulated that this "was a Jersey City Recreation Department activity,"[1] and that the presence of the board of education resulted only from the fact that they agreed to "lease, rent or [permit the] use [of] the facility."
At the conclusion of plaintiff's case respecting liability, the trial judge granted defendants' motions for dismissal. He held the city was "immunized" by N.J.S.A. 59:2-7.[2] With respect to the Board of Education, he held they also came under the statutory umbrella. He also said that there was "no evidence of any duty on the part of the owner of the property to supervise, and the only reason that the Board of Education appears is because they own the building." Plaintiffs appeal from those determinations and from the denial of their subsequent motion for new trial directed only to the claim against the City of Jersey City.[3] We agree with the trial judge and affirm.
*463 First as to the board of education: As the trial judge recognized, clearly there was simply no causative nexus between the board and this accident. The board's only connection in any respect was that it owned the building. No defect in the premises was suggested and no facts at all appear which might impose on the board any duty to supervise. Jackson v. Hankinson, 51 N.J. 230 (1968); Titus v. Lindberg, 49 N.J. 66 (1967), and Caltavuturo v. Passaic, 124 N.J. Super. 361 (App.Div. 1973), certif. den. 63 N.J. 583 (1973), are all distinguishable in that each involved a student within the environment of the school day. Beyond that, the elements of control or supervision there apparent are absent here. Finally, in Caltavuturo the board was implicated on a derivative basis. We observe that Mr. Frager (or Fraiser) was not here joined as a defendant.
We are equally satisfied that the city was free from liability. Clearly, the city was immune from tort liability for the alleged failure to provide supervision. N.J.S.A. 59:2-7, 59:3-11; see Fahey v. Jersey City, 52 N.J. 103 (1968). While a potential for liability might have resulted had it undertaken supervision despite this immunity, see Costa v. Josey, 83 N.J. 49 (1980), the proofs do not support any inference of assumed supervision. As said by the trial judge, and clear from the testimony:
There is the evidence, I will agree that the infant used the word supervisor. But, his characterization isn't what makes the person whatever the person is. The only facts he gave were that the guy opened the door, closed the door. He never saw him do anything. He never say him play basketball. He never saw him referee a game. They didn't furnish the basketball. They were furnished by the children themselves.... So, if the children came during certain hours the door was locked this man would not let  they were supposed to be little children  hours when the bigger kids were there when the little kids were *464 supposed to be there and the bigger kids were there he was supposed to keep the bigger kids out. There is no evidence which the jury could find supervision was undertaken.
The mere presence of an employee at the scene does not imply supervision without something more. In the presence of statutory immunity or the absence of a duty otherwise imposed, there must be some conduct, no matter how minute, evidencing an intention to supervise by way of monitoring, entering into or becoming a part of the activity itself from which the injury sprang. Liability for negligent supervision will not be imposed simply because there was an incidental undertaking at the same place only tangentially related to the recreational activity. The proofs here cannot reasonably be said to demonstrate that the employee was anything more than someone in the nature of a ticket taker. The element or elements in addition to his presence necessary to support liability simply do not appear. As the trial judge succinctly and correctly said, "All that happened here is that the City of Jersey City had made a space available for use." Law v. Newark Bd. of Ed., 175 N.J. Super. 26 (App.Div. 1980), which is similar in many respects to the matter before us, involved a situation in which the board of education not only supplied the facilities, but supervisors as well. It appears in that case that permission to use the facilities included the condition that that use be "under the supervision of board employees." Id. at 29. In this important and dispositive respect Law is distinguishable. We are satisfied that here there is no liability.
We observe that the statement of facts provided by counsel for plaintiffs[4] is totally unsupported by any references to the *465 appendix and transcript. This plainly violates the clear directions of R. 2:6-2(a)(4). The transgression is more egregious because of such conclusions stated therein as "[t]he activities conducted at the school were controlled and supervised by the CITY OF JERSEY CITY, through its employees" (emphasis supplied), which we find to be simply not factual. We have determined not to impose a sanction as we might well do under R. 2:9-9. The deficiency must not be repeated.
Affirmed.
NOTES
[1] Although the subject is not treated in the record or the briefs, we assume from the absence of other proofs and the nature of its defense by corporation counsel that the Recreation Department is an agency of the municipal government of the City of Jersey City.
[2] At the motion for new trial the trial judge corrected that which he characterized as an "error of law." He observed that in the case of the city he was in error "in not paying any attention in really not noting [N.J.S.A.] 59:3-11."
[3] Plaintiffs did not include the judgment in favor of the board of education in their motion for new trial, counsel saying, "I don't believe I have any grounds for that, your Honor, based on your decision." Such a statement might easily be regarded as a waiver of the issue. Nevertheless, plaintiffs included in their brief before us an attack on the judgment in favor of the Board, albeit by way of a legal argument encompassing all of eleven lines of typewritten text. No matter: we do not regard this argument as much more than frivolous. Certainly it is not a difficult issue.
[4] This consists of a meager 15 lines which fail to detail in any respect the circumstances of the activity. In fact it sets forth that the infant plaintiff "was injured while taking part in a basketball game," unmistakably suggesting a traditional game rather than a pickup shooting of baskets as was the case. It tells us absolutely nothing of the employee's activities or purpose (which were the subject of testimony) beyond that he "was in the gym and reading a newspaper." An appellate court is entitled to more help than this. State v. Hild, 148 N.J. Super. 294 (App.Div. 1977).