234 N.J. Super. 208 (1989)
560 A.2d 725
EARL BURROUGHS, PLAINTIFF-APPELLANT,
v.
CITY OF ATLANTIC CITY, TEROY COLLINS, EDWARD THOMAS PORTER, BILL BAXTER, MICHAEL RULEY, JOHN DOES(S), A FICTITIOUS NAME, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 1989.
Decided June 28, 1989.
*210 Before Judges LONG, MUIR, Jr., and KEEFE.
William M. Honan argued the cause for the appellant (Horn, Kaplan, Goldberg, Gorny & Daniels, attorneys; Jack Gorny, of counsel; William M. Honan, on the brief).
James P. Savio argued the cause for the respondent (Savio, Reynolds & Drake, attorneys; James P. Savio, of counsel; Phyllis Coletta Boyle, on the brief).
The opinion of the court was delivered by KEEFE, J.S.C. (temporarily assigned).
Plaintiff Earl Burroughs appeals from a summary judgment order dismissing his personal injury complaint against the City of Atlantic City (City) and four City lifeguards, Teroy Collins, Edward Thomas Porter, Bill Baxter and Michael Ruley. Plaintiff alleged two grounds for recovery: maintenance of a dangerous condition (N.J.S.A. 59:4-2), and negligent supervision of the Atlantic City boardwalk and beach by the defendant lifeguards. (N.J.S.A. 59:3-11). Plaintiff claims that there were genuine issues of fact presented to the trial judge which precluded summary judgment. We disagree and affirm.
In his complaint plaintiff contended that on June 12, 1983, he "dove from the boardwalk into the Atlantic ocean," hit his head on the ocean bottom, broke his neck, and was rendered a permanent quadriplegic. Plaintiff's primary allegation was that the dangerous condition to "people using the Boardwalk" was the "absence of effective warnings" (emphasis added) against diving from the boardwalk. As to the liability of the defendant lifeguards, plaintiff simply alleged that they negligently performed their supervision obligations.
The beach and boardwalk area in question span the distance between Melrose and Adriatic Avenues in Atlantic City. Wooden bulkheads, extending as jetties into the ocean, divide the area into three beaches, identified as beaches # 1, # 2 and # 3. At the time of the accident, a lifeguard stand and lifeguard *211 shack were located on beach # 1. Beaches # 2 and # 3 were located south of beach # 1. There were signs in Spanish and English on beaches # 2 and # 3 stating that they were "Unprotected", which meant that there was no lifeguard on duty on either beach. Nonetheless, it was the practice of the lifeguards stationed on beach # 1 to periodically patrol the unprotected beaches and warn those who strayed into the water that such activity should take place on beach # 1.
The location of the boardwalk in this area is such that both the high water and low water marks fall to the land side of the boardwalk. At times bathers took advantage of this configuration and dove from the boardwalk into the ocean. However, on and prior to June 12, 1983, diving from the boardwalk was prohibited by ordinance. The City had posted signs on light stanchions along the boardwalk which read:

NO

DIVING

FROM

BOARDWALK

DEPT POLICE
Although not permitted, diving from the boardwalk happened on an "extremely frequent," although not daily basis during the summer. The lifeguards were aware of this and, consequently, it was their "normal habit and custom to try to get [the person] to stop that activity." If the person performing the activity did not heed the lifeguard's warning, a police officer would be summoned to assist.
On the day of the accident, plaintiff, a resident of Atlantic City for several years, went to the beach with other adult members of his family and several children. Plaintiff testified that he dove from the boardwalk on other occasions and had *212 seen other people do the same thing. He claims to have never seen the posted signs.
Defendant Ruley saw plaintiff's group on beach # 3. He testified that members of the group were drinking and smoking marijuana. However, Ruley did not testify that the plaintiff was either drinking or smoking marijuana, and plaintiff denied that he was drunk at the time of the accident. Ruley warned the group that "drinking was not allowed on the beach," and advised them "not to go into the water for their own safety." Following this encounter, Ruley indicated that he "continue[d] to keep an eye on these people" after he returned to the nearby protected beach. Ruley testified that this encounter occurred approximately an hour before plaintiff's accident.[1]
According to plaintiff and his son, plaintiff walked into the water to check its depth. Plaintiff said that the water was "up to around my neck." He suggested to his brother that they dive from the boardwalk. Plaintiff then walked onto the boardwalk and made his first and only dive of that day, resulting in his injuries.
Defendant Ruley testified that as he and defendant Baxter were "walking down the beach ..., because children were on the ... beach," he saw plaintiff dive from the boardwalk. At the time he saw plaintiff, one of plaintiff's feet was still in contact with the top railing. Ruley and Baxter reached plaintiff within 10 to 12 seconds and pulled him from the water. Before the incident involving the plaintiff occurred, the lifeguards had not observed anyone diving from the boardwalk.
The trial judge found that the proofs presented on the summary judgment motion did not establish a "dangerous *213 condition" under N.J.S.A. 59:4-2. Plaintiff contends that the facts presented a jury question.
N.J.S.A. 59:1-2 provides that "public entities shall only be liable for their negligence within the limitations of this act and only in accordance with the fair and uniform principles established herein." The Comment to N.J.S.A. 59:2-1 states in part that it is "anticipated that the courts will realistically interpret both the statutory and common-law immunities in order to effectuate their intended scope." Furthermore, the Comment to N.J.S.A. 59:4-2, upon which the City's defense is predicated, includes the following statement: "this section recognizes the difficulties inherent in a public entity's responsibility for maintaining its vast amounts of public property." In view of this legislative policy, it has long been recognized that the trial judge is required to make a "preliminary determination as to whether the alleged condition is in fact a dangerous one within the meaning of the statute. Otherwise the legislatively-decreed restrictive approach to liability would be illusory." Polyard v. Terry, 160 N.J. Super. 497, 508 (App.Div. 1978), aff'd o.b. 79 N.J. 547 (1979).
N.J.S.A. 59:4-2 provides:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a foreseeable risk of the kind of injury which was incurred....
The term "dangerous condition" is defined in N.J.S.A. 59:4-1(a) as:
[a] condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.
Plaintiff contends that the dangerous condition for purposes of liability is "the proximity of the Boardwalk over the shallow Ocean which was sufficiently opaque to deprive an observer from the Boardwalk of the ability to see the bottom, coupled with its use as diving platform." Plaintiff's expert opined that the posted warning was inadequate because: 1) it was not located in a way so as to gain the attention of the potential *214 diver; 2) it did not convey the nature of the hazard posed by particular conduct; 3) it did not warn of the hazard with the intensity commensurate with the outcome; 4) it did not explain how to act to avoid injury; and 5) it did not explain the consequences of failing to conform or obey the admonition. The expert said that the warning should read:

DANGER

SHALLOW WATER

NO DIVING

DIVING CAN CAUSE SERIOUS INJURIES
The expert suggested that the sign should also contain "a symbol for diving surrounded by the international red circle with a slash indicating that such activity is prohibited."
The question presented by the facts in this case is one of first impression. We have never before been called upon to decide a case under N.J.S.A. 59:4-2 where plaintiff was injured while using public property for an activity that was specifically prohibited by the public entity but, nonetheless, was arguably foreseeable. The definition of "dangerous condition" contained in N.J.S.A. 59:4-1(a) has given rise to substantial litigation. In most of the cases, there was no question that plaintiff was using the public property for a permitted purpose ("reasonably foreseeable"), and, in only one case, Speziale v. Newark Housing Auth., 193 N.J. Super. 413 (App.Div. 1984) discussed infra., has the "due care" phrase in the definition been addressed. Although no prior case is clearly dispositive of this one, a review of some prior decisions provides guidance.
In Speaks v. Jersey City Housing Auth., 193 N.J. Super. 405 (App.Div. 1984) cert. den. 97 N.J. 655 (1984), the infant plaintiff, while playing in a common yard outside the rear window of the apartment building where he resided in defendant's housing project, was struck by a bicycle frame thrown from the stairwell window. The defect in the property was the missing window frame which had it been present would have prevented *215 the bicycle from fitting through the opening. The novel question presented to the court in that case was not plaintiff's "due care" or his "foreseeable" use of the property, but rather, whether the foreseeable misconduct of a third party could combine with the defective condition of a public building to create a dangerous condition for which the public entity would be responsible. Following California law on the subject we held that,
governmental liability for a dangerous condition of property may be imposed `when an unreasonable risk of harm is created by a combination of defect in the property and acts of third parties.' Duarte v. State, 88 Cal. App.3d. 473, 151 Cal. Rptr. 727, 736 (Ct.App. 1979). (emphasis added).
Id. 193 N.J. Super. at 412. We found in that case that the misconduct of a third party was reasonably foreseeable based upon prior incidents. However, we distinguished between the "reasonable user requirement" in the context of "when the victim is himself using the very property" as opposed to when a third party's conduct is in issue.
[T]he reasonable user requirement, of equal necessity, refers to the conduct of an individual. The application of the reasonable user requirement is obvious when the victim is himself using the very property, which is allegedly in a dangerous condition, e.g., driving on a highway with pot holes or bumps. Relevant is whether there would have been a substantial risk of an accident to a motorist who was exercising due care. See Polyard v. Terry, 160 N.J. Super. 497, 508 (App.Div. 1978), aff'd o.b. 79 N.J. 547 (1979).
Id. 193 N.J. Super. at 411. Notwithstanding the conduct of either the plaintiff or of third parties, we said:
[t]he risk of injury necessarily relates to the physical condition of the property in question. While the degree of that risk may vary from slight or nonexistent to great depending on the use made, it remains the condition of the property which will determine whether any risk exists.
Id. at 411.
In Sharra v. City of Atlantic City, 199 N.J. Super. 535 (App.Div. 1985), plaintiff was injured while riding his bicycle on the boardwalk when he was struck by an unknown bicyclist proceeding in the opposite direction. The operation of a bicycle on the boardwalk at that time of day was a permitted use, and there was no evidence that plaintiff was operating his bicycle without due care. Plaintiff contended that the boardwalk constituted *216 a dangerous condition of public property. We held that a dangerous condition of public property cannot exist based solely upon the activities of a third person, and participation in creation of a dangerous condition by the public entity does not result simply from the public entity's failure to enforce a law. Id. at 540-541.
In Ross v. Moore, 221 N.J. Super. 1 (App.Div. 1987), plaintiff was struck by a car while crossing a public street on her way to an evening class at the defendant school. Plaintiff's husband had parked their car in the shopping center parking lot across from the school after finding that the school parking lot was full. The business school administrator testified that he was aware that evening students parked in the shopping center lot. Plaintiff argued that the school property was in a dangerous condition because of its limited parking spaces combined with the foreseeability that students, such as plaintiff, would be compelled to park across the street. Plaintiff contended that, although there was nothing inherently dangerous about the lot standing alone, the danger existed when it combined with the foreseeability that an accident, such as plaintiff's, would occur. In affirming summary judgment in favor of the defendant school we said:
[W]e have consistently rejected the contention that dangerous activities of other persons on public property, even if reasonably foreseeable, establish a dangerous condition of the property itself, Sharra v. City of Atlantic City, 199 N.J. Super. 535, 540-541 (App.Div. 1985); Setrin v. Glassboro State College, 136 N.J. Super. 329, 333-335 (App.Div. 1975). (emphasis added).
Id. 221 N.J. Super. at 5. We distinguished the factual setting of Ross from the facts presented in Speaks in a footnote when we said:
A governmental entity may be liable under N.J.S.A. 59:4-2 when a substantial risk of injury was created by a defect in its property in combination with a reasonably foreseeable act of negligence or vandalism by a third party, Speaks v. Jersey City Housing Auth., 193 N.J. Super. 405, 412 (App.Div. 1984), certif. den. 97 N.J. 655 (1984). That is not this case.
Id. 221 N.J. Super. at 5 (footnote 1).
In King by King v. Brown, 221 N.J. Super. 270 (App.Div. 1987), the mechanics of plaintiff's injury were identical to those *217 in Ross, supra, decided approximately two weeks earlier. In King, plaintiff was struck by a car while crossing the street. However, unlike the plaintiff in Ross, who admitted there was nothing inherently dangerous about the school's parking lot, King claimed that the substantial volume of pedestrian traffic on the street in question, combined with the high volume and configuration of vehicular traffic, created a dangerous condition of public property. The trial judge, relying upon Sharra, supra, ruled that a dangerous condition did not exist because there was no physical defect in the property "such as a hole in the roadway or a protruding manhole cover." Id. 221 N.J. Super. at 274. We assumed in our opinion that the trial judge believed a dangerous condition, as defined in N.J.S.A. 59:4-1(a), "does not refer to activity on the property." Ibid. (emphasis added). There is no question in the King case that both the defendant motor vehicle operator (Brown) and the plaintiff were using the property for the purposes intended. In affirming summary judgment for the three public entities we said:
In most cases, application of the dangerous condition standard requires consideration of both the physical characteristics of the property as well as the nature of the activities permitted on that property. Indeed, the definition of dangerous condition in N.J.S.A. 59:4-1a. requires consideration of the reasonably foreseeable use of the property.
Id. at 275.
Plaintiff takes solace in the above because of the last sentence in the quote. He argues that, because the diving activity from the boardwalk was known to both the city (evidenced by the posted signs) and the life guards (evidenced by their personal experience), the activity transformed into a condition of public property creating a substantial risk of injury to a foreseeable user. Plaintiff's reliance is misplaced.
Because plaintiff King and defendant Brown in King by King v. Brown, supra, were both using the public property for its permitted and intended purpose, i.e., for pedestrian and vehicular traffic, "foreseeable" use was not an issue. However, we did observe that application of the "dangerous condition standard requires consideration of both the physical characteristics *218 of the property as well as the nature of the activities permitted on that property." Id. at 275 (emphasis added). In the context of that case we said,
the test is whether the condition complained of creates a substantial risk of injury despite the exercise of due care by motorists and pedestrians.
Id. at 275-276. However, the test, as stated, was in the context of the understanding that the use of the public premises was a permitted one. Under those circumstances, we concluded:
There is nothing in the evidence in this case or in common experience to support an inference that the condition of Sunset Avenue was such that traffic congestion created a substantial risk of injury despite the exercise of due care by motorists and pedestrians.
Id. at 276.
Lastly, in the case of Speziale v. Newark Housing Auth., 193 N.J. Super. 413 (App.Div. 1984), the conduct of the plaintiff was clearly in issue. In that case plaintiff fell while attempting to enter a basement laundry room from an outside stairway during a rainstorm. The alleged dangerous condition was that the drain in the landing at the foot of the stairway did not adequately clear the landing of water. Consequently, plaintiff was required to step over the landing from the last step onto the threshold of the laundry room door in order to avoid getting her feet wet. In doing so, she fell. In that case we viewed the question of "due care" and "foreseeable" use of the public property using an objective standard, and concluded that,
A person in plaintiff's position here could have been reasonably expected to wait until the water condition abated, or to have sought assistance. Thus, the condition of the property did not create `a substantial risk of injury when ... used with due care in a manner in which it is reasonably foreseeable that it will be used' within the intendment of N.J.S.A. 59:4-1a. In construing the provision of the Tort Claims Act, we must `favor the immunity provisions over the liability provisions.'
Id. 193 N.J. Super. at 417.
From the preceding cases it becomes apparent that whether a dangerous condition is present depends on a combination of factors relating to physical condition, permitted conduct, *219 and objectively foreseeable behavior. An ocean boardwalk, although fulfilling a number of recreational uses, such as walking, jogging and cycling, is not intended, when viewed objectively, to be used either as a diving or jumping platform. Apparently, because of the proximity of this particular section of the City's boardwalk to the water, it became adaptable to a use not intended. Had the city, with knowledge of the activity, done nothing to prohibit this unintended use, diving arguably could have been deemed a tacitly permitted use. However, this is not the situation here. The defendant City posted signs prohibiting diving from the boardwalk, and its lifeguards were instructed to stop it when it was observed. Plaintiff does not contend that the use was either specificly or tacitly permitted, but only that diving was foreseeable and not effectively prevented. The ultimate question presented is, as in King by King, supra, whether the legislature intended that the circumstances presented by the activity that actually occurred in light of the use permitted constitutes a dangerous condition. Id. 221 N.J. Super. at 275.
Courts are obliged to interpret the Tort Claims Act in accordance with legislative policy. The legislature recognized that "the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done." N.J.S.A. 59:1-2. The general approach is one of immunity "[e]xcept as otherwise provided by this act...." N.J.S.A. 59:2-1a. These legislative statements make it clear that a public entity's liability for accidents occurring on its property is not co-extensive with the liability of private landowners. It is unlikely that the Legislature intended to expose a public entity to liability under circumstances where: 1) the public property is safe for its objectively intended use; 2) the public entity has specifically prohibited by ordinance a known but unintended use of the property; and 3) the public entity has *220 posted signs to that effect and instructed its employees to stop the prohibited activity when it is observed.
Although not raised by either party in their brief, imposing liability against the city under the circumstances of this case would, essentially, subvert the immunity provided in N.J.S.A. 59:2-4 which provides that:
[a] public entity is not liable for any injury caused by ... failing to enforce any law.
The plaintiff does not deny that a city ordinance exists prohibiting the conduct in question and that the signs were posted as evidence of that prohibition. Regardless of his claim that he did not see the sign, the fact remains that the conduct was legally prohibited. The lifeguard's warning to the group before the accident against swimming at that location, viewed objectively, encompassed diving as well and was an effort to enforce that law. To argue that it was not effectively done is to argue for liability notwithstanding the statute.
Plaintiff contends in his complaint, and through his expert witness, that the lifeguards were negligent, individually and collectively, in three respects: 1) failing to warn plaintiff of the hazards of diving from the boardwalk  conduct which was a frequent problem posed to the lifeguards; 2) given the allegedly intoxicated condition of members of the group, defendant Ruley failed to exercise his police powers in accordance with the law to have them removed from the beach so that they would not become a danger to themselves; and 3) defendant Ruley failed to keep sufficient observation of a group which he considered to be a "problem" to the point that plaintiff managed to make his way onto and over the boardwalk and assume a diving position before any whistle or warning was sounded by defendant Ruley or any other lifeguard. Plaintiff argues that the trial judge erred because he disregarded the opinions of plaintiff's expert witnesses and substituted his judgment for theirs. We remind counsel that expert testimony *221 is useful to fact finders in determining whether a standard of conduct has been violated but only after a legal duty has been found to exist. The question of whether a duty exists is a matter of law to be decided by the judge alone in the context of the circumstances of each case. See Polyard v. Terry, supra.; King by King v. Brown, supra.
Plaintiff claims that the facts of this case establish the existence of a duty, and, thus, a jury question on the issue of liability pursuant to N.J.S.A. 59:3-11. The statute provides:
A public employee is not liable for the failure to provide supervision of public recreational facilities. Nothing in this section exonerates a public employee for negligence in the supervision of a public recreational facility.
The City's boardwalk is a "public recreational facility" for purposes of the statute. Sharra v. City of Atlantic City, 199 N.J. Super. at 539. Plaintiff contends that the facts establish "supervision" by the lifeguards because they routinely patrolled beaches # 2 and # 3 to remind people on those beaches that they were "unprotected," and, in this case, by specifically advising the people in plaintiff's group that they should not swim for their own safety. Whether supervision was assumed under these facts is a question of law, albeit fact sensitive, since it undergirds the presence or absence of immunity under the statute. Plaintiff conceded in oral argument that had the lifeguards done nothing with reference to beaches # 2 or # 3, no liability would attach. However, plaintiff reasons that liability exists because the lifeguards patrolled the beach for the purpose of warning people to swim only in the protected area. Freitag v. Morris Cty., 177 N.J. Super. 234, 238-239 (App.Div. 1981).
The failure to provide lifeguards on beaches # 2 and # 3 on a permanent basis would not subject the public entity to liability. N.J.S.A. 59:2-7. See, Stempkowski v. Borough of Manasquan, 208 N.J. Super. 328, 330-331 (App.Div. 1986). The facts of Stempkowski are relevant to the analysis of this case. *222 In that case plaintiff was injured while attempting to rescue her children who were swimming in the surf at Manasquan beach. The immediate cause of her injury was a wave which knocked her down. Plaintiff alleged in her complaint that the borough and its employees were negligent in not supervising the beach. We found no liability as to the unnamed public employees under N.J.S.A. 59:3-11 because plaintiff failed to show that any employee "whether known by name or not, had accepted responsibility for supervision of her or her children when the accident happened. Her allegation was that she saw lifeguards during the afternoon, and that when the accident happened, they were not present or visible." No liability was found despite the fact that plaintiff, in her affidavit opposing summary judgment, said that "there were guard stands and lifeguards on each of the beaches in front of her when she first arrived at about noon." We concluded our opinion in that case by observing that, "[g]eneral supervision of the area as urged by plaintiff would not suffice." Id. at 333. See also, Troth v. State, 222 N.J. Super. 420, 427 (App.Div. 1988), cert. granted 111 N.J. 565 (1988) holding that "policing" is not "supervision as contemplated by the statute."
At best, plaintiff's proofs in this case establish only general supervision and policing by the lifeguards. The lifeguards' warnings to sunbathers on beach # 2 and # 3, and plaintiff's group in particular, can be reasonably viewed only as communications which both limited and defined the scope of their supervisory undertaking. Plaintiff does not allege that the warning from lifeguard Ruley was such that plaintiff, or any member of his group, relied upon it and expected that their activities would be monitored and their safety assured by defendant lifeguards. Thus, we conclude the supervision was not undertaken within the meaning of N.J.S.A. 59:3-11.
Affirmed.
NOTES
[1] Plaintiff contends in his brief that, "the Burroughs group however, recalls the time frame between their arrival and (sic) on beach # 3 and the dive as infinitely shorter." However, plaintiff does not support that assertion with any sworn testimony in the record.