697 A.2d 182

WILLIAM FLEUHR, PLAINTIFF–APPELLANT, v. CITY OF CAPE MAY, DEFENDANT–RESPONDENT, AND JOHN DOE AND COUNTY OF CAPE MAY, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted April 23, 1997—Decided July 30, 1997.

Before Judges LONG, A.A. RODRÍGUEZ and CUFF.

*Sandler & Marchesini*, attorneys for appellant (*Gregory Marchesini*, on the brief).

*Youngblood, Corcoran, Aleli, Lafferty, Stackhouse, Grossman & Gormley*, attorneys for respondent (*Phyllis Coletta*, on the brief).

The opinion of the court was delivered by

CUFF, J.A.D.

Plaintiff William Fleuhr broke his neck while body surfing in the ocean. He sued defendant City of Cape May for failure to supervise the activities of bathers, failure to warn bathers of the danger posed by the ocean on that day, and failure to protect plaintiff from the dangerous ocean conditions. Plaintiff appeals from the order dismissing his complaint based on the unimproved property immunity, *N.J.S.A.* 59:4–8, afforded by the New Jersey Tort Claims Act (Tort Claims Act), *N.J.S.A.* 59:1–1 to 12–3. We reverse the dismissal of plaintiff's claim predicated on negligent supervision by lifeguards stationed at the municipal beach.

On August 31, 1993, plaintiff entered the ocean at the First Avenue Beach, which was owned, operated and maintained by defendant City of Cape May. Lifeguards were on duty at this beach when plaintiff entered the water. He alleges that the ocean was turbulent due to Hurricane Emily and that the water conditions created an unreasonable risk of harm to him. He contends that defendant was under a duty to provide a safe place for plaintiff to swim and that defendant had undertaken to supervise the beach and adjacent ocean water by stationing lifeguards at the First Avenue Beach. He contends that defendant breached its duty to provide a safe place for him to swim by permitting him and others to enter the ocean at that place on that day. He further contends that defendant breached the duty owed to him by failing to warn him of the dangerous surf conditions. As a direct result of the failure to warn him of the dangerous conditions and the negligent supervision by the assigned lifeguards, he alleges

that he was knocked over by a strong wave and fractured several cervical vertebrae.

Defendant denied the allegations of the complaint and asserted that it was immune from suit pursuant to the unimproved property immunity afforded by the Tort Claims Act, *N.J.S.A.* 59:4–8. In reliance on this immunity, defendant moved for summary judgment, which was granted. In his written opinion, the motion judge reasoned that the immunity granted under *N.J.S.A.* 59:4–8 precludes this action because "the injury was caused exclusively by the action of the ocean."

Our review must proceed in accordance with the general analytical approach of the Tort Claims Act and then with specific reference to the applicable statutory provisions. *Troth v. State,* 117 *N.J.* 258, 265–66, 566 *A.*2d 515 (1989). Generally, we must recognize that the Tort Claims Act reestablishes public entity immunity from suit unless the Act declares that a public entity or public employee may be liable. *N.J.S.A.* 59:2–1a; *Manna v. State,* 129 *N.J.* 341, 346, 609 *A.*2d 757 (1992); *Troth, supra,* 117 *N.J.* at 266, 566 *A.*2d 515. Moreover, any liability established by the Tort Claims Act is subordinate to or "trumped" by any immunity recognized by the Act. *N.J.S.A.* 59:2–1b; *Tice v. Cramer,* 133 *N.J.* 347, 356, 627 *A.*2d 1090 (1993).

There are three provisions of the Tort Claims Act which affect this case: *N.J.S.A.* 59:2–7, *N.J.S.A.* 59:3–11 and *N.J.S.A.* 59:4–8. *N.J.S.A.* 59:2–7 provides:

A public entity is not liable for failure to provide supervision of public recreational facilities; provided, however, that nothing in this section shall exonerate a public entity from liability for failure to protect against a dangerous condition as provided in [*N.J.S.A.* 59:4–1 to 4–10].

*N.J.S.A.* 59:3–11 is the public employee counterpart to *N.J.S.A.* 59:2–7; it provides:

A public employee is not liable for the failure to provide supervision of public recreational facilities. Nothing in this section exonerates a public employee for negligence in the supervision of a public recreational facility.

The Attorney General's Task Force Comments to these sections note that the immunity conferred for failure to supervise a public

recreational facility represents a policy determination that public entity managers must remain free to conclude, without threat of liability, that supervision of public recreational facilities will not be provided. Comment on *N.J.S.A.* 59:2–7. On the other hand, "a public employee (and hence a public entity) is not exonerated for negligence once he undertakes to supervise the facility." Comment on *N.J.S.A.* 59:3–11.

By contrast, *N.J.S.A.* 59:4–8 provides:

> Neither a public entity nor a public employee is liable for an injury caused by a condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach.

The Task Force Comment to this section observes that this section

> reflect[s] the policy determination that it is desirable to permit the members of the public to use public property in its natural condition and that the burdens and expenses of putting such property in a safe condition as well as the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property to assume the risk of injuries arising therefrom as part of the price to be paid for benefits received.

No appellate court of this State has directly interpreted the applicability of the unimproved property immunity of *N.J.S.A.* 59:4–8 to a guarded beach. There have been cases which raised the issue of municipal negligence for negligent supervision of beaches but each has been disposed by the application of other Tort Claims Act provisions. For example, in *Stempkowski v. Borough of Manasquan,* 208 *N.J.Super.* 328, 506 *A.*2d 5 (App.Div. 1986), plaintiff alleged that the failure to provide lifeguards at an ocean beach created a dangerous condition of public property. We upheld the dismissal of plaintiff's complaint, citing *Sharra v. City of Atlantic City,* 199 *N.J.Super.* 535, 540, 489 *A.*2d 1252 (App.Div.1985), and explaining that a dangerous condition refers to the physical condition of the property itself and not to the activities conducted on the property. *Stempkowski, supra,* 208 *N.J.Super.* at 331–32, 506 *A.*2d 5. In dicta, we observed that plaintiff's claim was also barred by *N.J.S.A.* 59:3–11 because

plaintiff's claim rested on the municipality's failure to provide lifeguard services rather than the negligent provision of those services. *Stempkowski, supra*, 208 *N.J.Super.* at 332, 506 *A.2d* 5. This passage suggests that the outcome of plaintiff's case may have been different if she had alleged that lifeguards were present and had negligently performed their protective functions. On the other hand, the unimproved property immunity of *N.J.S.A.* 59:4–8 was not raised.

In *Burroughs v. City of Atlantic City*, 234 *N.J.Super.* 208, 560 *A.*2d 725 (App.Div.), *certif. denied*, 117 *N.J.* 647, 569 *A.*2d 1345 (1989), we affirmed the dismissal of a complaint founded in part on an allegation of negligent supervision of beach activities by lifeguards on an ocean beach. However, *Burroughs* does not assist resolution of the issue presented in this case because plaintiff's activities occurred on an unprotected portion of the beach. We rejected plaintiff's position that liability should attach because the lifeguards occasionally ventured onto the unprotected beaches and warned people to swim only in the protected area. We reasoned that their activity manifested a determination to provide lifeguard services only in a specific area. However, we also suggested that the outcome may have been different if plaintiff had relied on the lifeguard's warning and expected that his activities would be monitored and his safety assured. We said:

> At best, plaintiff's proofs in this case establish only general supervision and policing by the lifeguards. The lifeguards' warnings to sunbathers on beach # 2 and # 3, and plaintiff's group in particular, can be reasonably viewed only as communications which both limited and defined the scope of their supervisory undertaking. Plaintiff does not allege that the warning from lifeguard Ruley was such that plaintiff, or any member of his group, relied upon it and expected that their activities would be monitored and their safety assured by defendant lifeguards.
>
> [*Id.* at 222, 560 *A.*2d 725.]

Once again, however, there was no discussion of the unimproved property immunity of *N.J.S.A.* 59:4–8.

The only case by a state court which addresses the relationship between public entity or employee liability for negligent supervision of a beach and the unimproved public property immunity is *Kleinke v. City of Ocean City*, 163 *N.J.Super.* 424, 394 *A.*2d 1257

(Law Div.1978), *overruled in part, Sharra, supra,* 199 *N.J.Super.* 535, 489 *A.*2d 1252. In that case, the motion judge denied the City's motion for summary judgment on two grounds. First, the motion judge reasoned that a body surfer riding three- to six-foot waves amidst numerous bathers created a dangerous condition of public property (*N.J.S.A.* 59:4–2). *Kleinke, supra,* 163 *N.J.Super.* at 430, 394 *A.*2d 1257. Second, he concluded that liability for negligent supervision of a beach did not implicate the reasons for immunizing a public entity for injuries occurring on unimproved public property. *Id.* at 433, 394 *A.*2d 1257. *Sharra, supra,* overruled that portion of *Kleinke* which held that a body surfer in three- to six-foot waves amidst many bathers is a dangerous condition of public property. *Sharra, supra,* 199 *N.J.Super.* at 541, 489 *A.*2d 1252. We did not disturb the portion of the *Kleinke* ruling that the unimproved property immunity did not override liability for negligent supervision of a public beach, *ibid.,* but it was unnecessary to discuss that issue in *Sharra.*

In discussing whether a public employee and public entity are immunized for negligent supervision of a beach, the motion judge in *Kleinke* stated:

[T]he legislative concern expressed by *N.J.S.A.* 59:4–8 is that public entities should not be unduly burdened with having to make natural conditions of unimproved land safe. The provisions of *N.J.S.A.* 59:3–11 do not jeopardize that legislative concern because they provide that a public employee (and hence a public entity *N.J.S.A.* 59:2–7) is not liable for failure to *provide* supervision to public recreational areas. The concern of *N.J.S.A.* 59:3–11, is simply that once supervision is undertaken it must not be done in a negligent manner.

[*Kleinke, supra,* 163 *N.J.Super.* at 433, 394 *A.*2d 1257.]

This relationship between the liability and immunity provisions was considered in *Kowalsky v. Long Beach Township,* 72 *F.*3d 385 (3d Cir.1995). Indeed, the motion judge relied almost exclusively on *Kowalsky* in dismissing plaintiff's complaint. *Kowalsky* involves two swimming accidents which occurred on September 1 and 2; 1992, when Hurricane Gustav was 1000 to 1200 miles off-

shore.[1] *Id.* at 387. On September 1, 1990, Petrillo was swimming and was struck from behind by a wave which knocked him face first into the sand. *Ibid.* He was rendered a quadriplegic unable to speak. *Ibid.* On September 2, 1990, Kowalsky was swimming in an area protected by municipal lifeguards, when he was "caught between two waves and driven into the sand." *Ibid.* He suffered a broken neck and is paralyzed from the waist down. *Ibid.* The Court of Appeals for the Third Circuit recognized that the plaintiffs asserted a negligent supervision claim and that *N.J.S.A.* 59:3-11 imposes liability for negligent supervision of a public recreational facility. *Kowalsky, supra,* 72 *F.*3d at 390–91. The court determined, however, that the specific immunity for unimproved public property such as a beach overrides a negligent supervision claim. *Id.* at 392. We are not bound by *Kowalsky* because the federal court was interpreting state law and was attempting to predict what the Supreme Court of New Jersey would do if faced with the same issue. The decision is informative, but not binding. *See Linden Motor Freight Co., Inc. v. Travelers Ins. Co.,* 40 *N.J.* 511, 518, 193 *A.*2d 217 (1963); *Small v. Department of Corrections,* 243 *N.J.Super.* 439, 444, 579 *A.*2d 1263 (App.Div.1990) (citations omitted).

 We agree with the motion judge that the beach and the ocean are unimproved property. We also agree that once a bather enters a body of water, such as a river, lake, ocean or bay which is unimproved, there can be no liability for injuries which occur solely due to conditions encountered in that unimproved body of water. Thus, a person who encounters turbulence, forceful waves or uneven surfaces and who is injured solely due to those conditions has no cause of action against the public entity or public employee. That is because the public entity and public employee have no obligation to improve natural conditions or to ameliorate inherent but dangerous features of unimproved property. In

---

[1] On appeal, the separate case of *Petrillo v. Borough of Surf City* was consolidated with *Kowalsky.*

short, the public entity and public employees have no obligation to make unimproved property safe. Moreover, the public entity has no obligation to post signs or flags concerning the condition of the water and inform bathers if it is safe for them to enter the water. To that extent, we affirm the order granting summary judgment insofar as plaintiff asserts that the ocean constituted a dangerous condition and that the defendant had a duty to warn independent of its decision to provide lifeguards at the beach.

On the other hand, the decision to provide protective services at a beach and potential liability for negligent performance of those services does not implicate the reasons for the immunity for unimproved property. The unimproved property immunity is an extension of the immunity conferred on public entities and their employees for failing to provide supervision of public recreational facilities. It is designed to encourage public entities to acquire and provide recreational facilities. It also confers on the public entity the authority to provide or not to provide supervision, to improve or not to improve property. The State, county or municipality may still provide access to the public to recreational areas such as a river, lake, bay or ocean. The public entity has no legal obligation to supervise the activities at these sites. However, once a public entity decides to supervise the activities at the site, such as by providing lifeguards, it has presumably determined that more benefits are derived by providing lifeguards than by exercising its right to do nothing. Once it has made that decision, the fundamental reason for its immunity vanishes.

Moreover, a cause of action for negligent performance of protective services does not directly implicate the condition of the unimproved property. Rather, the focus of the claim is not on the condition of the unimproved property but on the fact that someone has undertaken to protect the public from the dangers posed by the property and has failed to do so. Stated differently, if the lifeguard properly discharged his/her function, the bather is not exposed to the danger posed by the body of water.

Recognition of a cause of action for negligent performance of lifeguard services at a beach also avoids the anomalous result of imposing liability for negligent performance of lifeguard services at a municipal pool while immunizing the same actions due to the natural rather than artificial nature of the swimming hole. We see no reason to have different exposures to liability and perhaps different expectations regarding conduct solely due to the character of the swimming facility.

■ Having concluded that plaintiff's claim for negligent performance of lifeguard services is not barred by the unimproved property immunity, we focus on the elements of claim of negligent supervision. In order to establish liability based on negligent supervision, a plaintiff must show: (1) that an injury was sustained at a public recreational facility; (2) that a public employee undertook supervision of a public recreational facility, and (3) that the employee was negligent in supervision of the public recreational facility. *Sharra, supra,* 199 *N.J.Super.* at 539, 489 *A.*2d 1252. In *Morris v. City of Jersey City,* 179 *N.J.Super.* 460, 432 *A.*2d 553 (App.Div.1981), we defined supervision as follows:

> [T]here must be some conduct, no matter how minute, evidencing an intention to supervise by way of monitoring, entering into or becoming a part of the activity itself from which the injury sprang. Liability for negligent supervision will not be imposed simply because there was an incidental undertaking at the same place only tangentially related to the recreational activity.
>
> [*Id.* at 464, 432 *A.*2d 553.]

Thus, a plaintiff must show a specific act or omission by a public employee who has undertaken actions which evidence involvement in the activity conducted at the facility from which the injury sprang. *Sharra, supra,* 199 *N.J.Super.* at 538, 489 *A.*2d 1252. Moreover, plaintiff should be prepared to show that he relied on the protective services and expected that he could swim safely at that site. *Burroughs, supra,* 234 *N.J.Super.* at 222, 560 *A.*2d 725.

Due to the motion judge's conclusion that plaintiff's claim for negligent supervision of the beach was barred by an immunity, there has been no consideration of whether plaintiff can establish

a negligent supervision claim. Therefore, we reverse and remand for further proceedings consistent with this opinion.