136 N.J. Super. 329 (1975)
346 A.2d 102
STEPHEN PAUL SETRIN AND WILLIAM M. SETRIN, PLAINTIFFS-APPELLANTS,
v.
GLASSBORO STATE COLLEGE, DEFENDANT-RESPONDENT, AND CALVIN C. TROY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1975.
Decided September 29, 1975.
*330 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. Thomas T. Warshaw argued the cause for appellants (Messrs. Drazin and Warshaw, attorneys; Mr. G. Donald Haneke, of counsel and on the brief).
Mr. Thomas H. Klein, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by BISCHOFF, J.A.D.
Plaintiff Stephen Setrin was stabbed while on the grounds of Glassboro State College (college). He filed a complaint against Calvin C. Troy, the one who allegedly inflicted the injuries, and the college, seeking damages for the injuries sustained. His father joined in the action, asserting his derivative claim. A motion of the college for summary judgment was granted and the complaint against it was dismissed. The judgment of dismissal was based on the conclusion of the trial judge that plaintiffs' action against the college was barred by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.
A consideration of the entire record, giving plaintiff the benefit of all favorable inferences, R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-77 (1954), discloses the following.
Plaintiff Stephen alleges in his complaint that prior to December 12, 1972 there were incidents of racial unrest at *331 the college which involved rioting between black and white students and the college was aware of this condition. On the evening of December 12 Stephen, a student at the college, attended a basketball game in the college gymnasium. During the game rioting broke out between black and white students and at half-time Stephen left the gymnasium to return to his dormitory. While enroute from the gymnasium to his dormitory he was attacked by defendant Troy without provocation or warning and stabbed in the abdomen. In depositions Stephen describes the incident in the following words:
* * * I went to the basketball game at Glassboro State College with my friend and at half time we decided to leave the game because I thought there was going to be trouble after the game and I heard rumors. So we left the game at half time I was proceeding outside and I met a group of friends and then we all walked out together and I decided to go back and get some pop corn by myself. * * *
He further states he walked back, "got some pop corn" and started out the door of the gymnasium when he was accosted by defendant Troy and two others. He walked around them out the door and started toward his dormitory. Troy and the others followed, words ensued, resulting in an altercation and Stephen was stabbed.
Plaintiffs' allegations of negligence on the part of the college, as contained in plaintiffs' factual contentions in the pretrial order, include the charge that the college "was negligent in failing to exercise proper supervisory care having knowledge of the previous episodes of racial disturbance which occurred prior to the game and during the game" and, further, was negligent "in that it failed to have sufficient police officers or guards in attendance at said game to prevent assaults between black and white students attending said college."
Plaintiffs originally contended that the college was not a state entity and, therefore, the New Jersey Tort Claims Act was not applicable. That contention has been abandoned. *332 Plaintiffs' present contention is that the trial judge erred in holding the college immune from liability under the New Jersey Tort Claims Act.
Plaintiffs contend that
(1) their claim is not based on any alleged failure to provide police protection within the meaning of N.J.S.A. 59:5-4, which reads:
Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.
(2) the conduct of the college falls within the proviso of N.J.S.A. 59:2-7, which reads:
A public entity is not liable for failure to provide supervision of public recreational facilities; provided, however, that nothing in this section shall exonerate a public entity from liability for failure to protect against a dangerous condition as provided in chapter 4.
and,
(3) "dangerous condition" as defined in N.J.S.A. 59:4-1(a) is broad enough to encompass the circumstances under which plaintiff sustained his injuries. That section reads:
As used in this chapter:
a. "Dangerous condition" means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used. * * *
Plaintiffs argue that the combination of conditions existing on the night of the stabbing resulting from racial unrest, tension and rioting, together with the assembly of students in the gymnasium attending the basketball game, created a "dangerous condition" within the intent and meaning of N.J.S.A. 59:4-1(a). They further argue that the question of whether a dangerous condition existed and whether defendant failed to protect against the dangerous *333 condition within the intent and meaning of N.J.S.A. 59:2-7 created factual issues calling for a plenary trial.
The narrow issue thus presented is whether a state entity may be liable in tort for failure to protect against a dangerous condition when that dangerous condition is the criminal propensity of a third person on the premises rather than a physical defect in the premises. We approach the resolution of this issue bearing in mind the legislative declaration of public policy to be that
* * * Public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. * * * [N.J.S.A. 59: 1-2]
The circumstances under which a public entity is liable for the condition of its property is defined in N.J.S.A. 59:4-2:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition. Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
Consideration of the overall statutory design leads us to the conclusion that the "dangerous condition" of the property intended to provide a basis for the imposition of liability would not include the mere presence on the property of a person with criminal intent or purpose as in the facts of this case.
*334 The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., was modeled after the California Tort Claims Act, Cal. Gov't. Code § 810 et seq. See e.g., comment to N.J.S.A. 59:2-1. Accordingly, it is logical to look to California decisions for guidance in interpreting the act. Ford Motor Co. v. N.J. Dept. of Labor & Industry, 7 N.J. Super. 30, 38 (App. Div.), aff'd 5 N.J. 494 (1950); 2A Sutherland, Statutory Construction (Sands, 4th ed. 1973), § 52.01 at 328 et seq. In Hayes v. State, 11 Cal.3d 469, 113 Cal. Rptr. 599, 521 P.2d 855 (1974), the Supreme Court of California faced an issue similar to the one involved here. Plaintiffs there, while asleep on a beach at the University of California campus, were attacked and severely beaten by unknown persons. Suit was brought against the state and others for the injuries and death thus inflicted. It was alleged that the presence of the unknown persons who committed the criminal act created a dangerous condition on the premises. The court held that a "dangerous condition" is not created by the acts of third persons alone:
* * * Liability for injury caused by a dangerous condition of property has been imposed when an unreasonable risk of harm is created by a combination of defect in the property and acts of third parties. (E.g., Baldwin v. State of California (1972), 6 Cal.3d 424, 99 Cal. Rptr. 145, 491 P.2d 1121; Quelvog v. City of Long Beach (1970), 6 Cal. App.3d 584, 591-592, 86 Cal. Rptr. 127.) However, courts have consistently refused to characterize harmful third party conduct as a dangerous condition  absent some concurrent contributing defect in the property itself. (See, e.g., Jones v. Czapkay (1960), 182 Cal. App.2d 192, 203, 6 Cal. Rptr. 182 (presence of tuberculosis carrier on street does not constitute dangerous condition of property); Seybert v. County of Imperial (1958), 162 Cal. App.2d 209, 212, 214, 327 P.2d 560 (if lake itself not dangerous, no liability for waterskiing accident caused by third person's negligence); Campbell v. City of Santa Monica (1942), 51 Cal. App.2d 626, 629, 125 P.2d 561 (no liability for failure to warn pedestrians of foreseeably negligent use of streets by motorists).) * * * [Id.: emphasis in original]
We conclude that the criminal conduct of Troy, occurring as it did between the gymnasium and plaintiff's dormitory, *335 did not result from  nor did it create  a "dangerous condition" so as to impose liability on the college under N.J.S.A. 59:4-1 et seq.
Plaintiffs seek support from the comment contained in the report of the Attorney General's Task Force following N.J.S.A. 59:4-2, where it is stated:
* * * It is anticipated that this section will be developed to the extent possible in accordance with common law principles of landowner liability.
Plaintiffs then refer to 2 Restatement, Torts 2d, § 344 (1965),[1] and would have us adopt the rules of law developed thereunder to determine the liability of the possessor of land when a member of the public enters upon land for the business purposes of the possessor and suffers physical harm.
Consideration of the specific purposes under which the New Jersey Tort Claims Act was enacted, the legislative declaration of public policy contained in N.J.S.A. 59:1-2, and the adoption of principles of continuing immunity of public entities generally, N.J.S.A. 59:2-1, compels us to reject the contention that the developing law respecting private possessors of land, as set forth in 2 Restatement, Torts 2d, § 344 (1965), should be incorporated into the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.
In essence, plaintiffs' contentions amount to no more than a claim that Stephen did not receive sufficient police protection service. By express prohibition of N.J.S.A. 59:2-7 such a claim is excluded as the basis of a cause of action.
*336 Affirmed.
BOTTER, J.A.D. (concurring).
I concur in the result. Here the decisive act was criminal conduct which did not occur during riotous, mob behavior in the gymnasium. However, I do not find it necessary to decide whether the principles of liability embodied in 2 Restatement, Torts 2d, § 344 at 223-224 (1965), would be inapplicable in all cases arising under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. Cf. Goldberg v. Newark Housing Authority, 38 N.J. 578, 583-590 (1962), where former Chief Justice Weintraub said:
Again, it is fairly simple to decide how many ushers or guards suffice at a skating rink or a railroad platform to deal with the crush of a crowd and the risks of unintentional injury which the nature of the business creates, but how can one know what measures will protect against the thug, the narcotic addict, the degenerate, the psychopath and the psychotic? Must the owner prevent all crime? [at 589-590]
Cf. also, Mayer v. Jersey City Housing Authority, 84 N.J. Super. 411, 423 (App. Div. 1964), aff'd o.b. 44 N.J. 567 (1965).
NOTES
[1] 2 Restatement, Torts 2d, § 344 at 223 provides: "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public, while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it."