201 N.J. Super. 34 (1985)
492 A.2d 686
JEAN VANCHIERI AND MICHAEL VANCHIERI, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, WACKENHUT COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY AND JOHN DOE AND JANE DOE, FICTITIOUS NAMES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 1985.
Decided April 26, 1985.
*36 Before Judges KING, DEIGHAN and BILDER.
Cathy Ann Kenny, for appellants (Robert M. Gordon, Joseph M. Librie and Carla Marino, on the brief).
Zucker, Facher and Zucker, for respondent New Jersey Sports and Exposition Authority (Jonathan H. Rosenbluth, on the brief).
Britt & Riehl, for respondent Wackenhut Company (Ellen A. Reichart, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Plaintiffs appeal from a summary judgment dismissing their complaint based on the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq., for personal injuries sustained by plaintiff Jean *37 Vanchieri. She was knocked down by horseplay of young rowdies at the Giant Stadium while leaving a football game. In dismissing the complaint, the trial judge concluded that Rodriguez v. N.J. Sports & Exposition Authority, 193 N.J. Super. 39 (App.Div. 1983), certif. den. 96 N.J. 291 (1984) was dispositive of this matter. On appeal plaintiffs request that we reexamine Rodriguez or alternatively argue that it is not applicable to the facts of this case. We disagree and affirm.
On September 4, 1982 plaintiffs and Mr. and Mrs. Sassi attended a pre-season football game between the New York Jets and Denver Broncos at Giant Stadium at the Meadowlands Sports Complex. They remained in their seats after the game until the crowd thinned out and then proceeded to the main floor. Mrs. Vanchieri and Mrs. Sassi decided to go to the ladies room but changed their minds and walked back to meet their husbands. Mr. Vanchieri, who was talking with Mr. Sassi and waiting for their wives, heard a commotion, looked toward the crowd and saw "three kids" who seemed to be playing "touch football." One of the boys pushed the other into the two women; Mrs. Vanchieri went down, Mrs. Sassi fell on top of her and the boy fell on top of Mrs. Sassi. The boys were never identified.
Mr. Vanchieri ran to help his wife while Mr. Sassi went to seek medical or first aid assistance from stadium personnel. About 15 minutes later, personnel from the stadium arrived with a wheelchair. Mrs. Vanchieri was taken for emergency treatment to a room at the stadium and was later transported to the emergency room of Riverside General Hospital. X-rays revealed that she sustained a fracture of the left femur. Eventually, she required surgery for a prosthetic replacement of her left hip.
Subsequently, plaintiffs instituted the present action. In their complaint, plaintiffs allege that (1) both the Authority as owner and Wackenhut Company (Wackenhut), a private security agency, were responsible for security at the stadium and *38 were negligent in performing their duty; (2) the Authority was negligent in failing to hire proper security and to provide a safe place for plaintiffs; (3) the Authority was negligent in failing to provide emergency medical treatment; (4) Wackenhut was negligent in failing to provide for security and supervision, and (5) John and Jane Doe and the Authority were negligent in causing plaintiff's injuries. In the sixth count Mr. Vanchieri sues per quod.
The basic issue presented to us is whether a municipal entity within the definition of the Tort Claims Act and a private security agency hired by the municipal agency may be liable for failure to provide adequate crowd control and police security at a public sporting event.
As outlined by plaintiffs,
[t]he basis of Plaintiffs' case is as follows:
1. A dangerous condition existed at Giant Stadium on the date of the injury to Plaintiff Jean Vanchieri.
2. Defendants had either actual and/or constructive notice of said condition.
3. Defendants failed to warn Plaintiffs of said condition.
4. Defendants failed to provide proper supervision at the Stadium before, during, and after the event attended by plaintiffs.
5. There are sufficient questions of fact to warrant jury trial of the issues.
6. Rodriguez v. New Jersey Sports and Exposition Authority, supra, is incorrect on the law, and inapplicable to the case of Plaintiffs herein.
7. New Jersey Stat. Ann. 59:5-4 is not applicable to Plaintiffs' case.
Plaintiffs urge that defendant Wackenhut's failure to provide adequate security created a dangerous condition at the Meadowlands Sports Complex which resulted in plaintiff's injury. They contend that Wackenhut is not a police agency and therefore may not invoke immunity pursuant to N.J.S.A. 59:5-4 (failure to provide police protection). They argue that since Wackenhut is not an official police agency, such as a county or municipal police force authorized by N.J.S.A. 40A:14-106, 107 and 118, neither the Authority nor Wackenhut may claim protection under the Tort Claims Act. Further, they maintain that Wackenhut and the Authority failed to provide adequate supervision or were negligent in providing supervision. Finally, they *39 argue that Rodriguez was improperly decided and urge this court to reject Rodriguez or hold that it does not apply under the facts of this case.
Defendants invoke immunity generally under two provisions of the Tort Claims Act. First, N.J.S.A. 59:2-7, which provides:
A public entity is not liable for failure to provide supervision of public recreational facilities; provided, however, that nothing in this section shall exonerate a public entity from liability for failure to protect against a dangerous condition as provided in Chapter 4.
A dangerous condition is defined in N.J.S.A. 59:4-1(a) as
... A condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.
N.J.S.A. 59:4-2 describes a public entity's general liability for a dangerous condition of property as follows:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created a dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
The second provision upon which defendants rely for immunity from suit is N.J.S.A. 59:5-4 which provides that:
Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.
In support of their position that the activities of the rompish boys playing touch football in the absence of security guards created a dangerous condition within the Tort Claims Act, plaintiffs rely heavily upon Kleinke v. City of Ocean City, 163 N.J. Super. 424 (Law Div. 1978). There, the plaintiff was injured by the combination of a body surfer and three to *40 six-foot waves. We reject Kleinke insofar as it holds that a body surfer in three to six-foot waves constitutes a "dangerous condition" of property of a municipal entity.
The term "dangerous condition" as defined in N.J.S.A. 59:4-1(a) refers to the physical condition of the property itself and not to activities on the property. See Rodriguez v. N.J. Sports & Exposition Authority, supra (attacks by persons in sports complex not a dangerous condition). In Cogsville v. Trenton, 159 N.J. Super. 71 (App.Div. 1978) an infant plaintiff was injured when she was bitten by a dog owned by a tenant occupying a dwelling owned by the city. Plaintiffs alleged knowledge of the dangerous propensities of the dog and that the dog's presence on the property created a dangerous condition. 159 N.J. Super. at 73. This court rejected plaintiff's theory holding that "the term `dangerous condition' as used in that provision [N.J.S.A. 59:4-2] is restricted to physical conditions." Id. at 74.
In Setrin v. Glassboro State College, 136 N.J. Super. 329 (App.Div. 1975) a college student was assaulted on the college campus and he sued the college alleging negligent supervision because the college authorities had knowledge of prior episodes of racial disturbances. 136 N.J. Super. at 330-31. After examining the pertinent sections under the Tort Claims Act we stated that
[c]onsideration of the overall statutory design leads us to the conclusion that the "dangerous condition" of the property intended to provide a basis for the imposition of liability would not include the mere presence on the property of a person with criminal intent or purpose as in the facts of this case. [Id. at 333].
Plaintiffs attempt to distinguish Setrin noting that there criminal behavior was involved whereas here no criminal action has been alleged. However, Hayes v. State, 11 Cal.3d 469, 113 Cal. Rptr. 599, 521 P.2d 855 (1974), a California case upon which we relied for support in Setrin, did not distinguish between criminal conduct and noncriminal but harmful conduct. Hayes spoke in general terms noting that absent some contributing defect in the property itself "harmful third-party conduct" has *41 not been deemed a dangerous condition for purposes of relieving a plaintiff from the strictures of the Tort Claims Act. 136 N.J. Super. at 334.
Plaintiffs also rely upon Morris v. Jersey City, 179 N.J. Super. 460 (App.Div. 1981) and Law v. Newark Bd. of Ed., 175 N.J. Super. 26 (App.Div. 1980) to support their claim that the Authority created a dangerous condition at the stadium by failing to provide sufficient security. Both cases are inapposite for that proposition. Morris denied liability where the minor plaintiff was injured playing basketball in the public school gym, after hours and without supervision. In Law, children were injured when they hitched a ride on a fire truck which responded to a dumpster fire on the playground. Liability against the Board of Education was upheld because the recreational program was being supervised. Both cases involved the sections of the Tort Claims Act pertaining to recreational facilities.
N.J.S.A. 59:2-7 immunizes a public entity for failure to provide supervision of a public recreational facility but does not exonerate the public entity for maintaining a dangerous condition. However, if a municipal employee assumes supervision of a recreational facility, liability for negligent supervision may attach. N.J.S.A. 59:3-11 provides that
[a] public employee is not liable for the failure to provide supervision of public recreational facilities. Nothing in this action exonerates a public employee for negligence in the supervision of a public recreational facility.
The type of supervision contemplated by these statutes is supervision of the activities and recreation facility and not the adequacy or inadequacy of police protection for spectators at a recreational facility. The Comment to N.J.S.A. 59:2-7 makes it clear that
[t]his provision reflects existing New Jersey case law which provides that liability must be denied for the failure to provide supervision for public playgrounds and recreational facilities because the "employment of supervisors involves the type of governmental policy determination which must remain free from the threat of tort liability." Fahey v. City of Jersey City, 52 N.J. 103, 110 *42 (1968). [Report of Attorney General's Task Force on Sovereign Immunity 1972].
To establish liability based on negligent supervision, a plaintiff must show that an injury was sustained (1) at a public recreational facility; (2) that a public employee undertook supervision of a public recreational facility, and (3) that the employee was negligent in the supervision of the public recreational facility. In Morris v. Jersey City, supra, this court defined supervision:
In the presence of statutory immunity or the absence of a duty otherwise imposed, there must be some conduct, no matter how minute, evidencing an intention to supervise by way of monitoring, entering itself from which the injury sprang. [179 N.J. Super. at 464].
The recreational liability for negligent supervision stems from a specific act or omission on the part of a municipal employee who has undertaken supervision of the recreational facility and pertains to the recreational activity itself. For example, in Fahey v. City of Jersey City, supra, cited in the Comment to N.J.S.A. 59:2-7, the municipal entity was held not liable for failure to employ supervisors for playground areas. 52 N.J. at 110. Any supervision by the Authority or Wackenhut over the Meadowlands Sports Complex is related to general overall police supervision, much the same as supervision or crowd control by any municipal entity over public streets, sidewalks and public areas. Plaintiffs' allegations are: negligence in maintaining security, failing to hire proper security personnel and failing to provide a safe place. The gist of their cause of action is inadequate police protection which is controlled by N.J.S.A. 59:5-4 which provides that:
Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.
Plaintiffs' contention that the trial judge erred in invoking this section and granting immunity to the Authority and Wackenhut is rejected. See Rodriguez, supra, 193 N.J. Super. at 44-46. The Authority and Wackenhut may not be held liable for failure to provide adequate supervision or for negligence in providing supervision.
*43 Plaintiffs next contend that neither the Authority nor Wackenhut may claim protection under the Tort Claims Act because Wackenhut is not a police agency, that is, it is neither a county nor a municipal police force as authorized by statute. Plaintiffs fail to cite any authority for their contention that immunity may only be invoked by a public entity if it employs a county or municipal police force organized pursuant to statute. The Tort Claims Act does not suggest that a contract security force cannot fall within the purview of a police protection service within the meaning of N.J.S.A. 59:5-4. We hold that Wackenhut, as a private security agency under contract with the Authority, is within the immunity provisions of the New Jersey Tort Claims Act.
Activities at the Meadowlands Sport Complex are not an everyday occurrence so as to warrant a permanent police force. The events are scheduled on specific dates and times for various sports and entertainment. The nature and frequency of activities vary with the season. The size of attendance may depend upon the nature of the event or presentation; it may depend on whether the event is held during the day or at night; it may be affected by weather conditions or by other factors such as competition for public attendance from other attractions. The complexion of the attendance may change with the nature of the event, i.e., the spectators at a rock concert may have different behavioral aspects than those in attendance at, for instance, a concert by Luciano Pavarotti.
The number of security officers and the nature of security for crowd control varies with each event. Under these circumstances, it would be impossible to maintain a fixed number of full-time or even part-time regular police personnel such as that which is maintained by a public entity. Moreover, in view of the various factors to be taken into account to determine the number of security personnel and the nature of security to be provided for each event, a decision with respect thereto is not a mere ministerial act but a discretionary act *44 concerning the hiring of personnel for the provision of adequate services. N.J.S.A. 59:2-3c.
Furthermore, even though plaintiffs do not raise the issue on this appeal, it is significant that the terms of the contract between the Authority and Wackenhut are nearly identical to the terms of the contract reviewed by this court in Rodriguez. Here, the contract between Wackenhut and the Authority requires Wackenhut to provide permanent posts and guards as "shall be fixed by the Authority and Wackenhut," but the Authority has the right to require specific assignments or transfers from one post to another or to require the establishment or change of hours. The Authority also has the right to specify the number of employees necessary for each event at the track, stadium, arena and future facilities. The Authority has the right to approve or disapprove of any personnel and to make policy decisions regarding the security functions; it has the right to determine guard posts, the number of people to be employed, site security, track, stadium, arena and future facilities' security, and the type and amount of equipment to be used. As in Rodriguez, plaintiffs here have failed to establish that Wackenhut violated any part of the security plan established by the Authority or that it was in any way negligent in the execution of its contract with the Authority.
Finally, plaintiffs' contention that Rodriguez v. N.J. Sports & Exposition Authority, supra, was improperly decided is likewise rejected. There, Judge Michels in holding that N.J.S.A. 59:5-4 applied stated:
The gravamen of Rodriguez's claim is that the Authority did not provide adequate and effective security for him and other patrons at the Meadowlands Racetrack. This essentially is a claim that the Authority did not provide "sufficient police protection service" and hence falls squarely within the broad immunity granted to the Authority and its employees by N.J.S.A. 59:5-4. The Authority determined to provide police protection service by contracting Pinkerton's, a competent security force, to aid in the protection and security of the Meadowlands complex. Although the Authority, through Pinkerton's, may not have provided sufficient security personnel or deployed them in such a way as to prevent the assault and robbery of Rodriguez, such conduct cannot serve as *45 a basis for the imposition of tort liability against the Authority or its Director of Security, John Crusas. [at 43].
Plaintiffs' reliance on Miller v. State, 62 N.Y.2d 506, 478 N.Y.S.2d 829, 467 N.E.2d 493 (Ct.App. 1984), is misplaced. There, plaintiff sued the state to recover for personal injuries she sustained when she was raped in her dormitory at the State University of New York at Stony Brook. Plaintiff claimed that the state failed as a landlord to properly maintain the dormitory by failing to lock the outer entrances. The New York Court of Appeals held that the state had a proprietary function as a landlord which it breached. Id. at 832-33, 467 N.E.2d at 496-97. There was no issue concerning the applicability of immunity under a Tort Claims Act such as that involved here.
Affirmed.